UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ROSA CECILIA NAVARRETE DE PEDRERO,
PAULINA LILIAN PEDRERO NAVARRETE,
ANABEL FLORES VILLALOBOS,
ARACELI BEATRIZ HERRERA MUNOZ;
MANUEL GARCIA OSORIO,
MARIA DEL CARMEN RAMIREZ CORTEZ,
SERGIO ANTONIO PEDRERO NAVARRETTE,
FERNANDO HERNANDEZ VELAZQUEZ,
BERTHA LOPEZ ZARCO and
LILI MARLEN GARCIA HERRERA,

                Plaintiffs,

v.

SCHWEIZER AIRCRAFT CORP.,

                Defendant.

**DECLARATION OF DAVID LOPEZ**

Civil Action No. 08-CV-00117-WMS

---

I, DAVID LOPEZ, declare, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

### I. Introduction

1.1    My name is David Lopez. I am over 18 years of age. I am duly licensed to practice law in the states of Texas and California and am a partner with the law firm of Pulman, Cappuccio & Pullen, LLP, in San Antonio, Texas. A true and correct copy of my curriculum vitae describing my employment and educational background is attached hereto as **Exhibit 1**.

1.2    The Mexican legal system is the central focus of my scholarly and research interests. Beginning in January 1994, I taught courses involving various aspects of the Mexican legal system, including North American Legal Systems (Comparative Law: U.S., Mexico, and Canada) and NAFTA. I wrote the chapter on "The Legal System of Mexico" that appeared in William Hein & Co.'s 20-volume Modern Legal Systems Cyclopedia in 2000. I also wrote the brief chapter on "Mexico's Legal System" that appeared in 2002 in Transnational Publisher's Doing Business in Mexico series. In 2004, the book titled Mexican Law that I co-authored was published by Oxford University Press. My co-authors are a Justice of the Supreme Court of Mexico, two professors at one of Mexico's top law schools (ITAM) and the former Dean of the University of

1

        Houston Law Center. I presently am involved in research relating to the second edition of the <u>Mexican Law</u> treatise. In connection with this work, I have, during the past fourteen years, conducted intensive research into the structure and operation of Mexico's legal system.

1.3    I have taught and lectured in Mexico concerning matters of U.S. and Mexican law. In 1996, 1997, 1998, 1999 and 2000, I served as a visiting professor at the Universidad Autónoma de Guadalajara in connection with Baylor Law School's Study Abroad Program. I have delivered lectures on various occasions to Mexican judges, lawyers, and law students in Mexico City, Guadalajara, Monterrey and Veracruz, Mexico, and Austin and San Antonio, Texas. From 2001 to the present, I have been involved in an international law practice representing Mexican clients in lawsuits pending in the United States and in international arbitration involving issues of Mexican substantive and procedural law, and representing U.S. businesses on matters relating to Mexican law.

1.4    I have been asked to opine on Mexican law issues relating to the events underlying this case.

1.5    In formulating opinions herein, I have relied on my general familiarity with Mexican law and the Mexican legal system. I have consulted the sources of Mexican law cited below.

        I understand that, to date, very little discovery has been completed in this matter. Thus, I have reviewed a limited number of available case-specific materials, including Plaintiffs' Complaint (June 22, 2007); Plaintiffs' Initial Disclosures (Aug. 30, 2007); Initial Disclosures of Schweizer Aircraft Corporation (Aug. 30, 2007); an English translation of Captain P.A. Jose Luis Candiani Zamora's letter to Lic. Adalberto Oros Salido (July 14, 2006); and National Transportation Safety Board, Factual Report-Aviation, NTSB ID: DFW06WA147. The conclusions that follow assume that these documents are authentic, that they accurately portray developments in this case, and that the copies of them in my possession are true and complete.

1.6    I assume the following based on my review of case materials:

    (a)  In May 2006, a Schweizer 333 helicopter (Model 269-D) was being used in counter-narcotics operations on the Mexican side of the United States-Mexico border. Mexico's Federal Investigation Agency (*Agencia Federal de Investigación*), an agency of Mexico's Attorney General's Office, obtained the helicopter on a "no-cost lease basis" from the Bureau of International Narcotics and Law Enforcement Affairs of the United States Department of State.

        The helicopter was duly registered with Mexico's Department of Transportation under Registration No. XC-LJU.

        According to the NTSB Report, the Government of Mexico both "owned and operated" the helicopter. The helicopter did not operate under any United States certificate.

(b) ARINC Engineering Services, LLC ("ARINC"), a Delaware corporation based in Maryland, purchased the helicopter at issue and, in turn, sold it to the United States Department of State.

(c) Schweizer Aircraft Corporation ("Schweizer") is a Delaware corporation headquartered in New York that designed, manufactured and sold the helicopter at issue to ARINC in 2005.

(d) On May 30, 2006, three persons occupied the helicopter. The helicopter was piloted by Sergio Ovidio Pedrero Cornejo ("Captain Pedrero"), a Captain in Mexico's Air Force. Captain Pedrero held a valid commercial helicopter pilot's license (No. 200004268) issued by Mexico's Department of Transportation and was duly trained and certified to fly the Schweizer 333 helicopter.

Manuel Garcia Ramirez ("Technician Garcia"), a logistics support technician, was on board the aircraft.

Fernando Carlos Hernandez López ("Agent Hernandez"), an employee and agent of Mexico's Federal Investigation Agency, also was on board the aircraft.

At all relevant times, these three gentlemen were citizens and residents of Mexico.

(e) On May 30, 2006, the helicopter landed at the International Airport in Ciudad Juarez, Chihuahua, Mexico, in order to refuel. The helicopter left the Airport with the fuel tank at full capacity (70 gallons). Shortly after takeoff, the helicopter burst into flames and crashed in an industrial park in Juarez, killing all on board.

(f) Apparently because the helicopter was part of the aircraft fleet of Mexico's Attorney General (*Procuraduria General de la Republica*), the Attorney General's Office investigated the accident. On July 14, 2006, Captain José Luis Candiani Zamora ("Investigator Candiani"), an aeronautical expert with the Office of the Attorney General, found that:

· "The parts and components of the aircraft rule out the possibility of an explosion before or after impact."

· There was no evidence that the helicopter's motor failed or that it or any of its components may have caused the accident.

· The helicopter "had plenty of fuel" and "the fuel was clean and without impurities, meaning that this cannot be considered a factor in causing the accident."

· Technician Garcia "was the one in charge of refueling." He replaced the filler cap after refueling but did not fully secure it or evenly install it.

· Prior to take off, Captain Pedrero did not verify whether the filler cap had been

3

properly replaced and secured.

- The helicopter's fuel filler cap was not found attached to the helicopter after the accident or at the accident site. There was no evidence that the filler cap was ripped off the fuel cell entry or melted due to high temperature. On this basis, it was determined that "the fuel cell cap was not located in its proper position at the moment of impact."

- Due to the movement of the aircraft in flight, fuel escaped or spilled from the tank, came into contact with various components which generate heat or electrical energy, and ignited.

- The fire caused the cabin to fill with smoke. Captain Pedrero, due to hypoxia resulting from the inhalation of carbon monoxide (smoke), lost control of the aircraft. The helicopter fell abruptly toward the ground, causing the death of the three occupants and total destruction of the aircraft.

(g) Rosa Cecilia Navarrete de Pedrero ("Mrs. Pedrero") is Captain Pedrero's widow. She is, and at all relevant times was, a citizen of Mexico and resident of Zapopan, Jalisco, Mexico. Captain Pedrero is survived by two adult children, Sergio Antonio Pedrero Navarrete and Paulina Lilian Pedrero Navarrete. They are, and at all relevant times were, citizens of Mexico and residents of Zapopan, Jalisco, Mexico.

(h) Araceli Beatriz Herrera Muñoz ("Mrs. Garcia") is Technician Garcia's widow. She is, and at all relevant times was, a citizen of Mexico and resident of Tamaulipas, Mexico. Technician Garcia is survived by one minor child, Onesimo Garcia Herrera, and one adult child, Lili Marlen Garcia Herrera. They are, and at all relevant times were, citizens and residents of Mexico. Manuel Garcia Osorio and Maria del Carmen Ramirez Cortez are Technician Garcia's surviving parents. They are, and at all relevant times were, citizens and residents of Mexico.

(i) Anabel Flores Villalobos ("Mrs. Hernandez") is Agent Hernandez's widow. She is, and at all relevant times was, a citizen of Mexico and resident of the Federal District of Mexico. Agent Hernandez is survived by one minor child, Kevin Fernando Hernandez. He is, and at all relevant times was, a citizen and resident of Mexico. Fernando Hernandez Velazquez and Bertha López Zarco are Agent Hernandez's surviving parents. They are, and at all relevant times were, citizens and residents of Mexico.

(j) Plaintiffs filed this lawsuit on June 22, 2007.

## II. The Mexican Legal System Generally

2.1   Because Mexico is a Civil Law country, codes play a primary role in defining the relative legal rights and obligations of parties. Codes are unitary works that attempt to integrate all norms of a distinct branch of law in a systematic, comprehensive, organized and

        logical manner. Mexico has distinct codes to regulate civil matters, penal matters, commerce, tax matters, civil procedure and criminal procedure. Mexican government operates according to a federal structure; thus, the federal government and each of the 31 Mexican states (and the Federal District) possess separate sets of codes. For the most part, state codes parallel the provisions and language of the federal codes.

2.2    Among Mexican codes, none is more central than the civil code. The *Código Civil Federal* (hereafter "Federal Civil Code") governs throughout the country in federal matters. Each state's civil code governs civil law matters that arise in the state that are not of a federal nature. 2 Jorge A. Vargas, <u>Mexican Law: A Treatise for Legal Practitioners and International Investors</u> 218-19 (1998). The State of Chihuahua's version of the civil code is the *Código Civil del Estado de Chihuahua*.

2.3    Mexican civil codes cover all matters in the civil legal realm, including the civil status of individuals, family law, assets, property, succession, contracts and other forms of civil obligations. Mexican civil codes do not provide for a series of torts like those found in Common Law jurisdictions; rather, rules concerning civil liability between private parties are set forth in the portion of the civil codes titled "Obligations" (*De las Obligaciones*). The law of obligations encompasses not only what a U.S. lawyer would understand to be tort theories but also contract and quasi-contract theories of legal duty.

2.4    The basic remedial goal in Mexican civil law is restoration of the plaintiff to his or her condition just prior to the time of injury. 3 Rafael Rojina Villegas, <u>Compendio de Derecho Civil: Teoría General de las Obligaciones</u> 295 (21st ed. 1998). In addition, Mexican law allows for the recovery of "moral damages" – i.e., damages for non-physical injury.

### III. Choice of Law

3.1    Mexican law expressly contemplates that it will govern the legal relations connected with the accident underlying this case and the legal effects of the accident. Article 1 of the Federal Civil Code provides:

> *The provisions of this Code shall govern throughout the Republic in matters of a federal nature.*[1]

In addition, Article 12 of the Federal Civil Code states:

> *Mexican laws apply to all persons within the Republic, as well as to acts and events which take place within its territory or under its jurisdiction, including those persons who submit themselves thereto, unless the law provides for the application of a foreign law, or it is otherwise provided by treaties or conventions to which Mexico is a signatory party.*

---

[1] Copies of the Mexican law provisions cited in this Declaration are set forth in **Exhibit 2**. An English translation of those provisions is set forth in **Exhibit 3**.

3.2    The helicopter accident at issue here unquestionably constitutes a matter of a "federal nature" in at least three senses. First, the Mexican Constitution defines national airspace to be a matter of federal interest and provides that "general means of communication" are within federal control. See Constitution (*Constitución Política de los Estados Unidos Mexicanos*), Arts. 27(¶ 4) & 73(¶ XVII). Second, Mexico's Law of Civil Aviation (*Ley de Aviación Civil*) defines Mexico's national airspace to be a "general means of communication" and provides that accidents that occur in the context of the use of such airspace are within "federal jurisdiction." See LAC, Arts. 1(¶ 2) & 3 (¶ 1). Third, the helicopter crashed while it was under lease to a federal agency, the AFI, and was deployed as part of the federal government's counter-narcotics operations. Moreover, Captain Pedrero, Technician Garcia and Agent Hernandez were "within the Republic" at all relevant times and the core events at issue took place in Mexico.

3.3    The federal statute immediately applicable to the helicopter accident is Mexico's Law of Civil Aviation. This statute contains a comprehensive system of regulation for the use of national airspace (Art. 3), registration of national aircraft (Art. 6), licensing of aeronautical personnel (Arts. 6 & 38), granting and suspension of licenses to providers of air travel or transport services to the public (Art. 15), redress for injuries sustained by air passengers (Arts. 61, 62 & 66-69), and investigatory authority in case of aircraft accidents (Art. 81).

3.4    The Law of Civil Aviation confers upon Mexico's federal courts the jurisdiction to adjudicate disputes arising thereunder. See LAC, Art. 3(¶ 2).

3.5    Under the Law of Civil Aviation, the helicopter at issue is classified as a "governmental" aircraft, as opposed to a civilian or military aircraft, because it was being used by Mexico's federal government. See LAC, Art. 5. Although governmental bodies do not need to secure permits from the Secretary of Transportation to operate their aircraft, they do have to meet the federal requirements concerning registration and insurance. See LAC, Art. 31(¶ 1). Under Article 74 of the Law of Civil Aviation, that insurance must be sufficient to cover liabilities for damages to passengers. See LAC, Art. 74.

3.6    Article 40 of the Law of Civil Aviation provides that the pilot of an aircraft is responsible for its operation and for the safety of the aircraft, crew members and passengers. See LAC, Art. 40(¶ 1). Thus, as a matter of law, Captain Pedrero was responsible for the safety of the helicopter, Technician Garcia and Agent Hernandez.

3.7    Article 44 of the Law of Civil Aviation provides that governmental aircraft shall bear markings with the preface "XC" to show that they are of Mexican nationality. See LAC, Art. 44. The fact that the aircraft at issue bore Registration No. XC-LJU confirms that it was of Mexican nationality and subject to Mexico's Law of Civil Aviation.

### IV. Plaintiffs' Possible Claim and Recovery Against Schweizer Aircraft

4.1    Plaintiffs assert a products liability claim against Schweizer Aircraft, alleging that the helicopter was defectively designed and unreasonably dangerous. See Complaint, at 6-7.

In particular, Plaintiffs allege that the "fuel filler cap was defectively designed," that "the helicopter contains no warning light in the cockpit to warn the pilot that the fuel cap is not properly replaced," that the fuselage was defectively designed, and that the "fuel filler pipe and air intake are defectively designed." See id. at 7. Further, Plaintiffs allege that Schweizer Aircraft "failed to provide adequate warnings." See id. Finally, Plaintiffs plead a negligence claim against Schweizer Aircraft. Plaintiffs claim that Schweizer Aircraft "failed to exercise reasonable care in the design of its helicopter." See id. at 8.

4.2    Subjective Liability Claim. In Mexico, Plaintiffs' products liability and negligence claims against Schweizer Aircraft would be brought as a claim for subjective liability (*responsabilidad subjetiva*) under Article 1910 of the Federal Civil Code. Article 1910, a general provision that entitles a person injured by the illicit or negligent conduct of another to recover damages from that person, is sufficiently broad to encompass all of the foregoing products liability and negligence allegations made by Plaintiffs. That provision states:

*Whoever, by acting illicitly or against the good customs, causes damage to another shall be obligated to compensate him, unless he can prove that the damage was caused as a result of the fault or inexcusable negligence of the victim.*

Pursuant to Article 1830 of the Federal Civil Code:

*An illicit act is one that is contrary to laws of public order or good customs.*

4.3    To establish that Schweizer Aircraft acted illicitly by allegedly defectively designing or manufacturing the helicopter or by acting negligently, Plaintiffs would show that Schweizer Aircraft violated some part of Mexican substantive law or U.S. substantive law. For example, a subjective liability claim premised upon a products liability theory could incorporate Article 82 of Mexico's Federal Consumer Protection Law (*Ley Federal de Protección al Consumidor*) which authorizes redress for defective products. Article 82 states:

*The consumer may opt to request restitution of the good or service, rescission of the contract or reduction in price, and in any case, discount or compensation, when the thing or object of the contract has defects or hidden defects that render it unsuitable for its ordinary uses, that diminish its quality or possibility of use, or that do not permit the safety normally expected by its nature or from its reasonable use. When the consumer opts for rescission, the supplier has the obligation to return the price paid and, in that event, the interest referred to in the second paragraph of Article 91 of this law.*

*The discount or compensation to which the foregoing paragraph refers shall be determined in accordance with the provisions of Article 92 TER of this law.*

7

*The foregoing is without prejudice to the indemnification which in that event corresponds to damages and losses.*

4.4  Material Damages.  Plaintiffs seek wrongful death damages, "survival damages, reasonable funeral and burial expenses, all pecuniary loss sustained in the past and the future, damages for past and future mental anguish, past and future loss of companionship and society, loss of inheritance, loss of consortium and loss of household services, loss of maintenance and support, and for the pain and mental anguish suffered by the decedents prior to death ...." Complaint, at 8-9.

4.5  If they were to prevail on an Article 1910 claim, Plaintiffs would be entitled to recover material damages (*daños materiales*) in accordance with Article 1915 of the Federal Civil Code and Articles 500, 501 and 502 of the Federal Labor Law.  Material damages are what a U.S. lawyer might think of as economic damages.

4.6  Rather than including a formula for calculating personal injury damages in the civil codes, most Mexican legislative bodies simply incorporate by reference into the civil codes the approach to compensating work-related injury set forth in Mexico's Federal Labor Law.  Article 1915 of the Federal Civil Code states:

*Compensation for damages shall, at the election of the injured party, consist of either the restoration of the prior situation, when that is possible, or of the payment of damages.*

*If injury is caused to individuals and results in death, total permanent disability, partial permanent disability, total temporary disability or partial temporary disability, the amount of compensation shall be determined in accordance with the provisions of the Federal Labor Law.  In order to calculate the corresponding indemnification, quadruple the highest minimum daily wage in effect in the region shall be taken as the base, and shall extend for the number of days provided for each disability set forth in the Federal Labor Law.  In the event of death, the indemnification is owed to the heirs of the injured party.*

*If the injured party was a wage-earner, the compensation is non-transferable and shall preferably be paid in one lump sum, absent a different agreement between the parties.*

*The prior provisions shall be observed in the case of Article 2647 of this Code.*

4.7  In the event of death, material damages consist of 2 months' wages for funeral expenses plus an indemnification in an amount equal to 4 times the highest daily minimum wage in effect in the region where the accident occurred for 730 days.  LFT, Arts. 500 & 502.

4.8  The right to receive compensation in the event of death is limited to the widow of the decedent (if any), minor children under the age of 16, children over 15 who have a

8

disability of 50 percent or more, and ascendants who were economically dependent on the decedent. LFT, Art. 501.

In this case, assuming they establish liability, the three widows (Mrs. Pedrero, Mrs. Garcia and Mrs. Hernandez) and the surviving minor children (Onesimo Garcia and Kevin Hernandez) would be eligible to recover material damages associated with the three death's at issue. Captain Pedrero's two adult children and Technician Garcia's one adult child are not entitled to share in such damages under Mexican law.[2] Finally, under Mexican law, Technician Garcia's and Agent Hernandez's surviving parents can share in the recovery of material damages only if they were "economically dependent" on their respective sons at the time of their deaths.

4.9   Direct and Immediate Cause. Mexican law requires that a plaintiff's injury must be a "direct and immediate consequence" of the act complained of. Article 2110 of the Federal Civil Code states:

*Damages and losses must be a direct and immediate consequence of the failure to comply with the obligation, whether they have already occurred or will necessarily occur.*

A finding that the deaths at issue were not the "direct and immediate consequence" of an act or omission of Schweizer Aircraft would bar recovery against it under Mexican law.

4.10   Limitations. The statute of limitations for bringing an Article 1910 claim is two years from the day on which the injury occurred. See Fed'l Civil Code, Art. 1934.

## V. Moral Damages

5.1   In addition to material damages discussed in Section IV above, Mexican law authorizes the recovery of moral damages (*daños morales*) in certain cases. Moral damages compensate for non-physical and defamatory injuries that a person suffers in his feelings, affections, beliefs, honor, decorum, reputation, privacy, and physical image, or in how he is perceived by others. Moral damages mostly are associated with libel and defamation claims and strict liability cases. Vargas, at 230.

5.2   Moral damages are not punitive damages. "Moral compensation is not a penalty inflicted upon the guilty, even though it has as a result, like the fine, a reduction in the patrimony. In effect, the end of moral compensation is not to inflict a loss upon the offender, but rather to obtain for the victim an increase in his patrimony ...." Manuel Borja Soriano, Teoría General de las Obligaciones 376 (Porrúa 15th ed. 1997).

---

[2] Because of the way in which material damages are computed under Mexican law, the fact that adult children do not share in recovery does not mean that the total potential recovery for each of the deaths is correspondingly reduced. It simply means that there are fewer persons who share in the total damages awarded.

5.3   To recover moral damages, a plaintiff must submit convincing proof of the illicit nature of the defendant's conduct and its direct causal relationship to the moral damage. Rojina Villegas, at 313; FCC, Art. 1916-Bis. Thus, claims for moral damages are subject to the defense of lack of causation.

5.4   Federal claims for moral damages are based on Article 1916 of the Federal Civil Code. That provision, in the form in which it existed at the time of the accident in May 2006, stated:

> *By moral damages is understood the detrimental impact sustained by a person in his feelings, affections, beliefs, appearances, honor, reputation, private life, physical integrity, and physical aspect, or in the consideration that others have of him. It shall be presumed that moral damages have been sustained when the freedom or the physical or physical integrity of a person has been unlawfully injured or impaired.*
>
> *When, as a result of unlawful acts or omission, a moral damage is produced, the person responsible therefore is obligated to repair it by way of an indemnification in money, independently of whether material damage was caused, in either contractual or extracontractual liability. A person answerable for strict liability under Article 1913, as well as the State and its officials under Articles 1927 and 1928 of this Code, shall likewise be liable for reparation of moral damages.*
>
> *The action of reparation is not transferable to third parties by inter vivos act, and only passes to the heirs of the victim when the latter has initiated the action during his lifetime.*
>
> *The amount of the indemnification shall be determined by the court, taking into account the rights that have been injured, the degree of liability, the economic situation of the liable party and the victim, as well as other circumstances in the case.*
>
> *When the moral damage has affected the victim in his dignity, honor, reputation, or consideration, the court shall order, at his request and at the expense of the liable party, the publication of an extract of the judgment, accurately reflecting the nature and extent of the same, through the media that it deems appropriate. In cases where the damage results from an act that had been broadcast in the media, the court shall order that the judgment extract be published to the same extent as the original broadcast.*

5.5   Under Mexican law, a decedent's moral damages claim dies with him and does not pass to his heirs unless that claim was the subject of a lawsuit filed <u>before</u> the claimant died. Federal Civil Code, Art. 1916(¶ 3). Here, Captain Pedrero's, Technician Garcia's and Agent Hernandez's moral damages claims died with them at the time of the accident because those claims were not the subject of a lawsuit initiated prior to the time of death.

10

5.6     The surviving spouses, children and parents of the three decedents may possess their own claims for moral damages under Mexican law. The description of moral damages in the first paragraph of Article 1916 as injury to "feelings" and "affections" suggests that they may have such a claim and there is no language elsewhere in Article 1916 expressly providing that such "indirect" moral damages claims are impermissible.

At least one federal judge in the United States has ruled that "derivative" or "indirect" moral damages are available under Article 1916 to the survivors of a person wrongfully killed and who were financially dependent upon the decedent. The Honorable Alia Moses Ludlum, Judge of the United States District Court for the Western District of Texas, made this ruling in 2006 in <u>Enrique Rodriguez, Jr., et al. v. Casa Chapa, S.A. de C.V.</u>, No. DR-04-CA-34-AML.

5.7     The amount of compensation is to be determined by the judge taking into account the rights violated, the degree of liability, the economic condition of the defendant and of the victim, and the other circumstances of the case. Federal Civil Code, Art. 1916(¶ 4); Manuel Bejarano Sánchez, <u>Obligaciones Civiles</u> 228 (4th ed. 1998); David Cienfuegos Salgado, "Responsabilidad Civil por Daño Moral," <u>Revista de Derecho Privado</u> 49, 62 (Sept.-Dic. 1998).

## VI.  **Alternative Forum**

6.1     An action in Mexico arising out of the helicopter crash at issue could be filed in either a federal district court or a state court of first instance. As a general matter, the Mexican Constitution confers on the country's federal courts subject matter jurisdiction over civil disputes involving compliance with and/or the application of federal law. <u>See</u> Const. Art. 104(I); <u>see</u> also Organic Law of the Federal Judicial Authority (*Ley Orgánica del Poder Judicial de la Federación*), Art. 53. However, disputes arising out of federal law tha0t solely affect private interests also may be brought in state court in Mexico, at plaintiff's election. <u>See</u> Organic Law, Art. 53.

6.2     The parties could, by mutual consent, decide which particular federal district court in which to adjudicate the case. <u>See</u> Federal Code of Civil Procedure (*Código Federal de Procedimientos Civiles*), Art. 23. In terms of possible venues, the Pedrero family lives in Jalisco, the Garcia family lives in Tamaulipas, the Hernandez family lives in the Federal District and the accident occurred in Chihuahua.

6.3     Using Jalisco as an example, there are 21 federal district courts in Mexico's Third Circuit, which includes the states of Jalisco and Colima. <u>See generally</u> Consejo de la Judicatura Federal <www.cjf.gob.mx>; Dirección General de Estadística y Planeación Judicial <www.dgepj.cjf.gob.mx>. Of these, 5 district courts have jurisdiction over civil matters such as this case. <u>See</u> <u>id</u>. All of these courts sit in the City of Guadalajara, very close to the Pedrero's residence in Zapopan, Jalisco. <u>See</u> <u>id</u>.

6.4     The 21 district judges in the Third Circuit are supported by a substantial judicial infrastructure. According to Mexico's Federal Judicial Council, in 2007, each district judge in the Third Circuit had an average of about 33 assistants or staff persons. <u>See</u> Consejo de la Judicatura Federal, Indicadores Judiciales 2007 – Tercer Circuito. The 21

11

district courts of the Third Circuit collectively had 164 secretaries, 83 court clerks, and 450 other administrative personnel.  See id.

### VII. Securing Evidence from Third-Parties

7.1  Assuming that a third-party such as Investigator Candiani or the Attorney General's Office possesses documentary evidence relating to the May 2006 accident at issue, it is a relatively straightforward process for plaintiffs or defendants to secure such evidence in the context of litigation in Mexico.

7.2  Federal law in Mexico authorizes federal judges to make use of any person (party or third-party) or any thing or document to learn the truth, subject to the rules of evidence and so long as the evidence has an immediate relation to the disputed facts.  See Federal Code of Civil Procedure, Art. 79.  There are no time limits on the court's ability to order the production of evidence deemed indispensable to a lawsuit.  See id.

7.3  A federal court in Mexico can compel a non-party to produce evidence in its possession. Article 90 of the Federal Code of Civil Procedure provides that third parties are obligated, at all times, to aid courts in investigations of truth and shall, without delay, produce documents and things within their power when necessary to do so.  See Federal Code of Civil Procedure, Art. 90.  Further, Article 90 grants courts the power and duty to compel third parties, by court order, to comply with the foregoing obligation.  See id.

7.4  If documents exist in a place distinct from where the case is pending, production can be compelled by a request to the district court sitting where the documents are located.  See Federal Code of Civil Procedure, Art. 135.

7.5  A federal court in Mexico can compel the testimony of witnesses.  Under Mexican law, all persons with knowledge of facts that the litigants in a case must prove are obligated to testify.  See Federal Code of Civil Procedure, Art. 165.  Witnesses shall be cited to testify when a party wishing to offer their testimony demonstrates that it is unable, by itself, to present the witnesses.  See Federal Code of Civil Procedure, Art. 167.  The citation shall warn of court action if the witness fails to testify without just cause.  Id.  Those who have been notified but fail to testify shall be compelled to do so by the court.  Id.

7.6  As a general matter, current and former public officials are not obligated to testify at the request of a party with respect to a matter that they came to know by virtue of performing their public functions.  See Federal Code of Civil Procedure, Art. 169.  However, such witnesses can be called to testify if the court deems it indispensable to its investigation of the truth.  See id.

## VIII. Final Points

8.1 My hourly rate for serving as an expert witness on issues relating to Mexican law in this case is $400. In addition, Schweizer Aircraft has agreed to reimburse my reasonable expenses incurred in connection with this matter. In no event are my expert witness fees contingent upon the substance of opinions rendered by me.

8.2 To the best of my knowledge and information, I have testified as an expert on Mexican law by deposition or in court during the preceding four-year period (June 2004 to June 2008) in the following cases: Aerovias de México, S.A. de C.V. v. Gerardo de Prevoisin, et al., No. 95CV26, District Court, Eagle County, Colorado, and Rukubi, S.A. de C.V. v. Alan Russell, et al., No. 2006-3813, 327th District Court, El Paso County, Texas.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on June 13, 2008

David Lopez

13