UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ROSA CECILIA NAVARETTE DE                          **DECISION and**
PEDRERO, et al.,                                                         **ORDER**
                                        Plaintiffs,               **---------------------**
                                                                              **REPORT and**
          v.                                                        **RECOMMENDATION**[1]


SCHWEIZER AIRCRAFT CORP.,                           **08-CV-117S(F)**
                                        Defendant.

_____

APPEARANCES:           HARRISON BETTIS STAFF
                                    McFARLAND & WEEMS, LLP
                                    Attorneys for Plaintiffs
                                    D. MITCHELL McFARLAND, of Counsel
                                    One Allen Center
                                    500 Dallas, Suite 2600
                                    Houston, Texas 77002

                                    BOND SCHOENECK & KING, PLLC
                                    Attorneys for Defendant
                                    LILLIAN ABBOT PFOHL,
                                    THOMAS D. KELEHER, of Counsel
                                    One Lincoln Center
                                    Syracuse, New York 13202


**JURISDICTION**

          This matter was referred to the undersigned by the Hon. William M. Skretny on

February 22, 2008 for disposition of all non-dispositive pretrial matters pursuant to 28

U.S.C. §636(b)(1)(A) and on June 30, 2008 for report and recommendation on

Defendant's motion to dismiss pursuant to §636(b)(1)(B). It is presently before the court

on the Defendant's motion to dismiss on the ground of *forum non conveniens,* filed June

---

[1]  As Plaintiffs' motions present non-dispositive issues and Defendant's motion is dispositive, all
three motions are addressed, in the interest of judicial efficiency, in this combined Decision & Order and
Report & Recommendation.

16, 2008 (Docket No. 52) ("Defendant's Motion"), and Plaintiffs' motion for leave to file a

sur-reply and to strike a reply declaration, filed August 1, 2008 (Docket No. 67)

("Plaintiffs' Motion").

**BACKGROUND**

This case was originally filed in the Southern District of Texas on June 22, 2007

(Docket No. 32, Att. 1) alleging Defendants' product liability and negligence.  Plaintiffs,

all Mexican citizens, are the heirs and beneficiaries of three individuals killed in a

helicopter crash which occurred in Cuidad Juarez, Mexico on May 30, 2006.  The

helicopter was designed and manufactured in New York state by Defendant, Schweizer

Aircraft Corp. ("Schweizer"), a Delaware corporation with its principal place of business

in Horseheads, New York.  The helicopter was purchased by ARINC Engineering

Services, LLC ("ARINC") in New York on behalf of the United States government for use

by the Mexican government in counter-narcotics efforts in Mexico.  The helicopter was

delivered by ARINC to Brownsville, Texas, where it was transported to Mexico by

representatives of the Mexican government.  On May 30, 2006, the helicopter landed for

refueling at the International Airport of Cuidad Juarez, Mexico.  After refueling, the

helicopter took off and crashed into an industrial park near the Cuidad Juarez airport.

The pilot and two passengers on board were killed and are believed to have been

working for the Mexican government at the time of their deaths.

In the Texas district court, Schweizer moved to dismiss the suit for lack of

personal jurisdiction.  In response, Plaintiffs moved to dismiss the claims against

ARINC, and to transfer the case to the Western District of New York based on diversity

of citizenship between Plaintiffs and Schweizer and Schweizer's admission that personal jurisdiction could be maintained in this district.[2]  On February 4, 2008, the court granted Plaintiffs' motions and the matter was transferred to this court on February 8, 2008 (Docket No. 32).

In this court, Schweizer filed its answer to the Complaint on May 29, 2008.  As noted, on June 16, 2008, Schweizer filed the instant motion to dismiss based on *forum non conveniens.*  In support of Defendant's motion, Schweizer filed a declaration of David Lopez, an expert in Mexican law (Docket No. 54)("Lopez Declaration") and an affidavit of Steven Gleason, Schweizer's chief accident investigator (Docket No. 53)("Gleason Affidavit").  In opposition, Plaintiffs filed the declaration of Henry Saint Dahl, Plaintiffs' Mexican law expert (Docket No. 61) (""Dahl Declaration").  Defendant filed a reply, including the reply declaration of Mr. Lopez (Docket No. 64) ("Lopez Reply Declaration").  Plaintiffs sought leave to file a sur-reply, simultaneously filing a motion for permission and the proposed sur-reply (Docket No. 67), including an additional declaration of Mr. Dahl (Docket No. 69) ("Dahl Sur-Reply Declaration").  As part of Plaintiffs' motion, Plaintiffs also seek an order striking portions of the Lopez Reply Declaration.  On August 25, 2008, Schweizer filed a memorandum of law in opposition to the Plaintiffs' motion (Docket No. 73) ("Defendant's Memorandum").  On August 27, 2008, Plaintiffs filed a reply (Docket No. 74).  Based in the following, Plaintiffs' motion is GRANTED in part and DENIED in part;  Defendant's motion should be GRANTED.

---

[2]  Counsel for Schweizer withdrew the motion to dismiss orally on the record during proceedings before this court on April 30, 2008.

**FACTS[3]**

According to Mr. Gleason, the helicopter was manufactured in New York state in 2005 (Gleason Affidavit ¶ 2).  It was purchased by ARINC Engineering Services, LLC in New York on behalf of the United States government (*Id.* ¶ 3).  ARINC delivered the helicopter to Brownsville, Texas, where representatives of the Mexican government took possession of the helicopter and flew it to Mexico, where the helicopter was subsequently maintained and operated (*Id.* ¶ 4).  On May 30, 2006, the helicopter crashed shortly after take-off following refueling at the International Airport of Cuidad Juarez, Mexico, resulting in the deaths of the pilot and two passengers (*Id.* ¶¶ 5,6).  Mexican authorities led the investigation into the accident, and retained control of the wreckage (*Id.* ¶¶ 9, 10).

Gleason represents that Schweizer will consent to the jurisdiction of the Mexican courts to litigate this action.  Additionally, to the extent that any claims that Plaintiffs have against Schweizer became time-barred under Mexican law during the pendency of the litigation, Schweizer agrees to waive any applicable statute of limitations defenses available to Schweizer.  Finally, Gleason states that if Defendant's motion is granted, Schweizer also will consent to produce in Mexico all necessary design witnesses and relevant documents for pretrial discovery and trial in Mexico's courts (Docket No. 53, ¶¶ 11-12).

Lopez stated that the Mexican Attorney General's office investigated the accident and determined that, following refueling, the helicopter's fuel tank filler cap was not

---

[3]  Taken from the pleadings and papers filed in connection with the Defendant's and Plaintiffs' motions.

properly replaced and secured (Lopez Declaration ¶ 1.6(f)).  According to Lopez, upon

take-off, fuel spilled out of the fuel tank, coming into contact with various heat-

generating components of the aircraft, and ignited (*Id.*).  The official investigation of the

accident revealed the resulting fire caused the helicopter cabin to fill with smoke,

causing the pilot to lose control of the aircraft, which then crashed (*Id.* ¶ 1.6(f)).

Lopez avers that Mexican civil law applies to acts and events that occur in

Mexican territory (Lopez Declaration ¶ 3.1).  According to Lopez, Plaintiffs' product

liability and negligence claims against Schweizer would be treated by Mexican courts as

claims for "subjective liability" under Article 1910 of the Federal Civil Code of Mexico

(*Id.,* ¶ 4.2), allowing Plaintiffs to recover "material" or economic damages for the deaths

of Plaintiffs' decedents (*Id.* ¶ 4.5).  Such damages would include two months wages for

each decedent for their respective funeral expenses plus an indemnification to Plaintiffs

in an amount equal to four times the highest daily minimum wage in effect in the region[4]

for each decedent for a period of 730 days.  Lopez also opined that under Mexican law

such compensation is shared by surviving spouses, minor children under the age of 16,

disabled children 15 years and older, and surviving parents if they were economically

dependent on the decedent (*Id.* ¶¶ 4.5 - 4.8).  Additionally, under Mexican law, Lopez

states Plaintiffs may be entitled to recover "moral" damages for the detrimental impact

to their feelings and affections caused by the deaths of the decedents based on

Defendant's liability for a defective product and negligence which caused the decedents'

deaths (*Id.* ¶¶ 5.4-5.6).  Mr. Lopez also stated that Mexican courts can compel the

---

[4]  The term "region" is not further defined.

production of witnesses and evidence (*Id.* ¶¶ 7.1-7.6).

In opposition, Plaintiffs submitted a declaration of Henry Saint Dahl, who

Plaintiffs represent as an expert in Mexican law.  According to Dahl, under Mexican law,

subject matter jurisdiction over this case by Mexican courts lies solely in the

Defendant's domicile, New York state, not the Plaintiffs' (Dahl Declaration, ¶ 21).  Dahl

also asserts that under Mexican law, the issuance of the summons in this lawsuit in the

United States district court in Texas preempts jurisdiction of a Mexican court (*Id.* ¶ 33).

Dahl maintains that Schweizer's proposed consent to jurisdiction in a Mexican court

would be inoperative in a Mexican court, as such consents are not recognized under

Mexican law (*Id.* ¶ 57).  According to Dahl, to be effective, a stipulation as to the

jurisdiction of the Mexican court must include an express agreement of both parties (*Id.*

¶ 60).  Dahl also opined that Mexican evidentiary rules, such as the unavailability of

depositions and limitations on testimonial evidence, render the Mexican courts an

inadequate forum for this lawsuit (*Id.* ¶ 80-81).  Dahl stated that "material damages"

available under Mexican law, under the facts of this case, would probably total about

$10,000 per death, making it difficult to find an attorney to take the case on a

contingency fee basis, while hourly payment to an attorney would cost more than the

expected damage award, assuming Plaintiffs were successful (*Id.,* ¶ 86).

In reply, Mr. Lopez reiterated his opinion that the case would be governed by

Mexican federal law (Lopez Reply Declaration, ¶¶ 2.2, 2.3).  Lopez also states that a

Mexican court could exercise jurisdiction over a non-domiciled defendant on "mutual

consent" of the parties  (*Id.* ¶ 3.4).  Lopez maintains that commencement of the action in

the United States District Court in Texas does not preempt the later exercise of

jurisdiction by a Mexican court, but only "forestalls" other courts in Mexico from simultaneously adjudicating it (*Id.* ¶ 3.19).  Lopez admitted there are no "American-style" depositions available to parties under Mexican law but, according to Lopez, Mexico's Federal Code of Civil Procedure provides that the Mexican federal court can compel the production of documents and other evidence and the testimony of witnesses, including non-parties (*Id.,* ¶ 4.2, 4.3).

In addition to Plaintiffs' proposed sur-reply memorandum (Docket No. 68), in a second declaration, Mr. Dahl stated that he obtained an advisory opinion from the Office of the Legal Counsel for the Mexican Secretary of State (Docket No. 69).   Accordingly, Plaintiffs submitted an unsworn letter from Joel Hernandez Garcia, Legal Advisor to the Mexican "Secretaria de Relaciones Exteriores," not further defined, in which Mr. Hernandez Garcia advises that "a claim against a foreign manufacturer of a helicopter alleging a defect in construction is not governed by the Mexican Civil Aviation Code" (*Id*. Exh. 1).[5]  Additionally, Mr. Hernandez Garcia stated that Mexico and the United States are parties to the United Nations International Covenant on Civil and Political Rights, which entitles nationals of signatory countries to avail themselves of the rights and remedies afforded by the laws of other signatory countries  (*Id.).*[6]

---

[5]  Defendant does not assert that the case is governed by the Mexican Civil Aviation Code.

[6]  The court's *sua sponte* review of this international agreement, particularly Articles 14 and 16 as referenced by Mr. Hernandez Garcia, *see* United Nations Covenant on Civil and Political Rights, Dec. 16, 1966, 999 U.N.T.S. 171, reveals that it has no applicability to the issues presented on Defendant's motion. Significantly, Plaintiffs do not contend that this international agreement modifies the doctrine of *forum non conveniens* under United States law.

**DISCUSSION**

The court first addresses Plaintiffs' motions, for leave to file a sur-reply and to strike the reply declaration of David Lopez (Docket No. 72). The reply declaration of David Lopez is directed at points raised by Mr. Dahl in his declaration and the court finds no basis for it to be stricken. The Plaintiffs' proposed sur-reply memorandum, including the unsworn letter from Mr. Hernandez Garcia, while perhaps unnecessary, presents arguably relevant information. Motions for leave to file sur-reply information and to strike are subject to the sound discretion of the court. *See Kapiti v. Kelly,* 2008 WL 754686, *1 n.1 (S.D.N.Y. March 12, 2008) (the decision to permit a litigant to submit a sur-reply is a matter left to the court's discretion); *Morse v. Weingarten,* 777 F.Supp. 312, 319 (S.D.N.Y. 1991) (motion to strike is committed to the court's discretion). Accordingly, Plaintiffs' motion for permission to file Plaintiffs' sur-reply is GRANTED; however, Plaintiffs' motion to strike the Lopez reply declaration is DENIED. The court thus turns to Defendant's motion.

The doctrine of *forum non conveniens* is based on the principle that "'a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute.'" *Norex Petroleum Ltd. v. Access Indus., Inc.,* 416 F.3d 146, 153 (2d Cir. 2005), *cert. denied,* 547 U.S. 1175 (2006) (*quoting Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947)). Notwithstanding the propriety of the action in a particular district under the general federal venue statute, 28 U.S.C. § 1391, under the doctrine of *forum non conveniens,* "dismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his

choice." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981).  The Supreme Court

has declined to delineate the exclusive factors that would "'justify or require either grant

or denial of remedy.'" *Id*. (*quoting Gilbert,* 330 U.S. at 508).  Consequently, a district

court's inquiry is highly fact-specific. *Id.; see also Walpex Trading Co. v. Yacimientos*

*Petroliferos Fiscales Bolivianos*, 712 F.Supp. 383, 392-93 (S.D.N.Y. 1989) ("The

Supreme Court has emphasized the flexibility with which the District Court must

approach a *forum non conveniens* determination, and consequently there are no

specific circumstances which would require either a grant or denial of the remedy.").

In exercising its discretion in ruling on motions to dismiss based on *forum non*

*conveniens*, the court applies the three-step analysis outlined in *Iragorri v. United*

*Technologies Corp.*, 274 F.3d 65, 73-74 (2d Cir.2001) (*en banc*):

> At step one, a court determines the degree of deference properly
> accorded the plaintiff's choice of forum. At step two, it considers whether
> the alternative forum proposed by the defendants is adequate to
> adjudicate the parties' dispute. Finally, at step three, a court balances the
> private and public interests implicated in the choice of forum.

*Norex,* 416 F.3d at 153 (internal citations omitted).  As explained in *Iragorri*, when

reviewing a motion to dismiss for *forum non conveniens*, there is an assumption that

plaintiff's choice of forum will be sustained unless defendant can demonstrate that

reasons exist to afford plaintiff's choice less deference.  *Iragorri,* 274 F.3d at 70-71.  In

fact, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of

forum should rarely be disturbed."  *Gilbert*, 330 U.S. at 508.  Nonetheless,

circumstances may alter the degree of deference given a plaintiff's forum choice.  For

example, when a plaintiff sues in his home forum, that choice is generally entitled to

great deference, *Koster v.(Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947),

because it is presumed to be convenient to the plaintiff.  *See Reyno*, 454 U.S. at

255-56.  In contrast, when a foreign plaintiff sues in a United States forum such choice

is entitled to less deference because one may not easily presume that such choice is

convenient to the plaintiff.  *Id.* at 256.  In these circumstances, "it is more likely that

forum-shopping for a higher damage award or for some other litigation advantage was

the motivation for plaintiff's selection."  *Pollux Holding Ltd. v. Chase Manhattan Bank*,

329 F.3d 64, 71 (2d Cir. 2003), *cert. denied,* 540 U.S. 1149 (2004).

        In *Iragorri*, the Second Circuit stated that the level of deference to any plaintiff's

choice of forum moves on a "sliding scale" depending on several considerations.

*Iragorri,* 274 F.3d at 71.  Specifically, the Second Circuit explained that a plaintiff's

choice of forum should receive greater deference where it appears that there is a

genuine connection between the plaintiff, or the lawsuit, and the forum, or that the

plaintiff was sincerely concerned with convenience issues in choosing that forum, and

less deference is warranted when it appears that the choice of forum was motivated by

forum-shopping.  *Id.* at 72.  To assist the district courts in making this determination, the

Second Circuit highlighted some factors to be considered.  For example, factors that

support a plaintiff's choice of forum include the convenience of the plaintiff's residence

in relation to the chosen forum, the availability of witnesses or evidence in the chosen

forum, defendant's amenability to suit in the forum district, the availability of appropriate

legal assistance, and other reasons relating to convenience or expense.  *Id.*

Alternatively, factors that would decrease the level of such deference include attempts

to win a tactical advantage resulting from local laws, generosity of juries in the United

States or in the forum district, the litigant's popularity, or their adversaries' unpopularity,

in the district, or the inconvenience and expense of defending the suit in that jurisdiction.

*Id.*

> Bearing in mind that litigants rarely are concerned with promoting their adversary's convenience at their own expense, a plaintiff's choice of the defendant's home forum over other fora where defendant is amenable to suit and to which the plaintiff and the circumstances of the case are much more closely connected suggests the possibility that plaintiff's choice was made for reasons of trial strategy.  Accordingly, a plaintiff's choice to initiate suit in the defendant's home forum - as opposed to any other where the defendant is also amenable to suit - only merits heightened deference to the extent that the plaintiff and the case possess bona fide connections to, and convenience factors favor, that forum.

*Pollux,* 329 F.3d at 74.

Considering the above factors, the court notes that all of the Plaintiffs are Mexican citizens with no apparent connection to the Western District of New York, while Defendant is domiciled in this district.  Witnesses and documents on the issue of the design of the helicopter are present and available in the Western District of New York, but Defendant has agreed to provide such evidence in a Mexican court as well.  Other witnesses and evidence, including the Plaintiffs, the accident investigators, the accident reports, and the wreckage of the helicopter, are located in Mexico.  Finally, Defendant has stipulated that it is amenable to suit in Mexico and would consent to the jurisdiction of a Mexican court.  Considering the *Iragorri* factors, the court finds that Plaintiffs' choice of forum in this district should only be accorded limited deference.

Turning to the issue of the availability of an alternative forum, Defendant contends that the case can be litigated in Mexico.  To demonstrate the existence of an adequate alternative forum, a defendant must show: (1) the defendant is amenable to process in the foreign forum, *Reyno*, 454 U.S. at 254 n. 22; (2) the foreign forum

permits litigation of the subject matter in dispute, *Bank of Credit & Commerce Int'l (Overseas) Ltd. v. State Bank of Pakistan,* 273 F.3d 241, 246 (2d Cir. 2001); and (3) there are no other considerations making the foreign forum unsatisfactory, *see DiRienzo v. Philip Servs. Corp.,* 232 F.3d 49, 57 (2d Cir. 2000), *vacated on other grounds,*294 F.3d 21 (2002) (adequacy of procedural safeguards and available remedies are other considerations in determining availability of alternative forum).  Here, Defendant has unequivocally agreed to litigate this action in the Mexican courts.  "An agreement by the defendant to submit to the jurisdiction of the foreign forum can generally satisfy this requirement," and only on rare occasions will the "alternative forum ... be so unsatisfactory that the forum is inadequate."  *DiRienzo*, 232 F.3d at 57 (citing *P.T. United Can Co. v. Crown Cork & Seal Co.,* 138 F.3d 65, 74-75 (2d Cir. 1998) and *R. Maganlal & Co. v. M.G. Chem. Co.*, 942 F.2d 164, 167 (2d Cir.1991)).

Plaintiffs' refusal to litigate the case in Mexico does not render the Mexican forum unavailable.  *See Morales v. Ford Motor Co.,* 313 F.Supp.2d 672, 676 (S.D. Tex. 2004) (only the availability of the forum, and not plaintiffs' willingness to avail themselves of the forum is relevant to the *forum non conveniens* inquiry).  There is nothing to prohibit the Plaintiffs from agreeing to the Defendant's stipulation to jurisdiction in the Mexican court, faced with the alternative of forgoing the litigation altogether.  Additionally, while Plaintiffs do not dispute that the case can be litigated under the Mexican Federal Civil Code, Plaintiffs contend that the available damages are such that the cost of litigating the case will exceed the potential recovery, rendering the case not economically viable. However, a limitation on available damages is a legitimate policy choice by the laws of a sovereign nation.  Accordingly, courts should not disregard this policy choice by finding

the Mexican courts to be an inadequate forum for Mexican tort victims.  *See Gonzalez v. Chrysler Corp.,* 301 F.3d 377, 382-83 (5th Cir. 2002), *cert. denied,* 538 U.S. 1012 (2003) (lack of economic viability of case does not render Mexican court inadequate); *see also Vasquez v. Bridgestone/Firestone, Inc.,* 325 F.3d 665, 671-72 (5th Cir. 2003) (notwithstanding that Mexico provides a wrongful death cause of action with damage cap, Mexican court is an adequate forum).

Finally, Plaintiffs argue that the concept of preemptive jurisdiction under Mexican law requires that once Plaintiffs have chosen an American court by initiating suit in such courts, the case may not thereafter be brought in a Mexican court (Dahl Decl. ¶ 34). However, a more careful analysis of the Mexican statute reveals that such prior filing merely "forestalls" jurisdiction while the case is pending in that court (Lopez Reply Decl. ¶¶ 3.18, 3.19).  Mr. Lopez explained that Article 328 of the Mexican Federal Code of Civil Procedure ("Article 328), which articulates the so-called preemptive jurisdiction concept, "applies when a case is before one court and then a second court simultaneously is presented with the same case.  That is not this situation."  (*Id.* ¶ 3.19). Mr. Lopez's explanation makes sense.  Should this court dismiss the action, it would no longer be pending and the case could be heard by a Mexican court consistent with Article 328.  To accept Plaintiffs' assertion of preemptive jurisdiction, as asserted by Mr. Dahl, would render the *forum non conveniens* doctrine ineffective in all cases involving a request to dismiss in favor of litigation in a Mexican court, an illogical result.

Having determined that Mexico provides an adequate forum, the court must consider a number of public and private factors relevant to the *forum non conveniens* calculus.  *See Gilbert*, 330 U.S. at 508-09.  Relevant private interests to the litigants

include: (1) "the relative ease of access to sources of proof"; (2) the "availability of compulsory process [to compel] attendance of unwilling, and the cost of obtaining attendance of willing, witnesses"; (3) the "possibility of view of premises, if view would be appropriate to the action;" (4) "the enforcibility of a judgment if one is obtained"; and (5) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 508. The public interests the court considers include: (1) "[a]dministrative difficulties" inherent in bringing a case in a congested docket; (2) imposing jury duty on citizens who have "no relation to the litigation"; (3) "holding the trial in [the] view and reach" of the citizens whom the trial might affect; (4) "local interest in having localized controversies decided at home"; and (5) avoiding requiring that "a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Id.* at 508-09.

Contrary to Plaintiffs' evident assumption, the law of Mexico will apply to this action regardless of whether it is tried in this court.[7] "A federal court sitting in diversity applies the choice of law rules of the forum state." *Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941)). "In the context of tort law, New York utilizes interest analysis to determine which of two competing jurisdiction has the greater interest in having its law applied in the litigation." *Padula v. Lilarn Properties Corp.*, 644 N.E.2d 1001, 1002 (N.Y. 1994). In determining the greater interest as to applicable law in tort cases, courts must consider (1) what the significant contacts are and in which jurisdiction they are located, and (2)

---

[7] Defendant argues that Mexican law will "likely" apply, favoring dismissal (Defendant's Memorandum at 9).

"whether the purpose of the law is to regulate conduct or allocate loss." *Padula*, 644

N.E.2d at 1002.

On the issue of significant contacts, Plaintiffs are domiciliaries of Mexico and the

accident occurred in Mexico.  Defendant is a domiciliary of New York, and the helicopter

was designed and manufactured in New York.  With respect to the second inquiry, New

York distinguishes between "conduct regulation" and "loss allocation" rules.  *Lee*, 166

F.3d at 545.  When the conflict involves rules that regulate conduct, New York law

usually applies the law of the place of the tort ( "*lex loci delicti*" ).  *Padula,*  644 N.E.2d at

1002; *see also Lee*, 166 F.3d at 545.  On the other hand, when the conflict involves

rules that allocate loss, *i.e.* they prohibit, assign or limit liability after the tort occurs, the

choice of law analysis is governed by the principles articulated in *Neumeier v. Kuehner*,

286 N.E.2d 454 (N.Y. 1972), which take into account the domicile of the parties, the

conduct at issue, and the purposes of the substantive law at issue.  *Padula,* 644 N.E.2d

at 1003; *Lee*, 166 F.3d at 545.  To the extent that the Complaint can be read as

asserting wrongful death claims on behalf of Plaintiffs, based on their respective

decedents' accidental deaths, those claims involve a loss allocation rule, *see, e.g. Miller*

*v. Miller*, 237 N.E.2d 877 (N.Y. 1968) (for purposes of choice of law issues, wrongful

death statute is loss-allocating).  Thus, Mexican law applies to Plaintiffs' wrongful death

claims.  Alternatively, Plaintiffs' claims for negligence and strict products liability involve

conduct regulation rules. *See, e.g. Cacciola v. Selco Balers, Inc.*, 127 F.Supp.2d 175,

184 (E.D.N.Y. 2001) (causes of action involving the duty and standard of care

applicable to manufacturers, *i.e.,* negligence and strict products liability claims, are, for

choice of law purposes, conduct regulating); *Richardson v. Michelin North America. Inc.,*

1997 WL 461994, at * 3 (W.D.N.Y. Aug. 8, 1997) (strict liability laws are conduct

regulating); *Wheeler v. Standard Tool & Mfg. Co.*, 359 F.Supp. 298, 301 (S.D.N.Y.

1973), *aff'd,* 497 F.2d 897 (2d Cir.1974) (strict liability claims are governed by the law of

the place of injury). Thus, the law of the jurisdiction where the Plaintiffs' decedents'

injuries in this case, including death, occurred, Mexico, applies to Plaintiffs' claims

alleging negligence and strict liability. *See, e.g. Burke v. Stone & Webster, Inc.*, 2006

WL 522604, at * 4 (S.D.N.Y. Mar. 2, 2006) (applying New Jersey law to the plaintiff's

products liability and negligence claims because New Jersey was the place were the

accident occurred and, accordingly, it is the state with the greatest interest in regulating

behavior within its borders).

Therefore, assuming the case had even initially proceeded in this court, under

the *Neumeier* rule applicable to wrongful death claims, when the parties are domiciled in

different states and the accident occurred in one of the domiciliary states, *see, e.g.*

*Barkanic v. General Admin. of Civil Aviation of the People's Republic of China*, 923 F.2d

957, 962-963 (2d Cir. 1991) (recognizing that the *Neumeier* rules apply to wrongful

death claims), the law of the jurisdiction where the accident occurred, Mexico, will be

applied in the absence of special circumstances.  *See Caruolo v. John Crane, Inc.*, 226

F.3d 46, 57 (2d Cir. 2000) (applying the *Neumeier* rules to the loss allocation claims).

Moreover, "[w]hen the extent of victim compensation is at issue, the plaintiff's domicile

has an interest in applying its law because that forum is where the loss is felt . . .."

*Sheldon v. PHH Corp.*, 135 F.3d 848, 853-854 (2d Cir. 1998).  Thus, under the

applicable *Neumeier* rule, this court will be required to apply Mexican law to Plaintiffs'

wrongful death claim as plaintiffs are domiciled in Mexico and the accident occurred

there.  In light of the inherent risks of misinterpretation of a foreign body of law to the

various substantive issues in this case, it will be more efficient that the matter be tried

by a Mexican court given its greater expected ability to understand and apply correctly

the applicable Mexican law.

Other public and private factors also favor dismissal in favor of a Mexican court.

Defendant has consented to provide design defect evidence and witnesses relevant to

this issue in a Mexican forum, while highly material evidence located in Mexico, such as

the accident investigation documents and witnesses,  which will not be readily within

Plaintiffs' control in this court, would be more accessible to both sides in a Mexican

forum.  Additionally, the cost of travel for any Mexican witnesses as well as the

Plaintiffs, would be burdensome. Similarly, any differences in the substantive law (which

based on the court's analysis is not a factor pointing away from a Mexican forum in this

case) and the discovery process does not render the Mexican forum less convenient.

Moreover, the lack of depositions in Mexico is equally disadvantageous to the parties.

"The unavailability of beneficial litigation procedures similar to those available in the

federal district courts does not render an alternative forum inadequate."  *Borden, Inc. v.*

*Meiji Milk Prods. Co.,* 919 F.2d 822, 829 (2d Cir. 1990), *cert. denied,* 500 U.S. 953

(1991).  Finally, the court recognizes that Mexican jurors have an interest in determining

the dispute on behalf of plaintiffs who reside in their own community, such as the

Plaintiffs, while New York jurors have an interest in determining the safety of a product

manufactured in their state by Defendant.  Accordingly, this factor does not favor either

party.  In sum, however, both the private and public factors favor dismissal of the case

on the basis of *forum non conveniens* in favor of the Mexican courts.

**CONCLUSION**

Based on the foregoing, Plaintiffs' non-dispositive motion (Doc. No. 67) to file a

sur-reply memorandum is GRANTED, and that part of Plaintiffs' motion seeking to strike

a reply declaration is DENIED;  the Defendant's motion to dismiss (Doc. No. 52) should

be GRANTED.

SO ORDERED as to
Plaintiffs' motion

      /s/ *Leslie G. Foschio*
_____
      LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:  January 21, 2009
       Buffalo, New York


                Respectfully Submitted,

                /s/ *Leslie G. Foschio*
            _____
                LESLIE G. FOSCHIO
           UNITED STATES MAGISTRATE JUDGE

DATED:  January 21, 2009
       Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 30(a).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiffs and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      January 21, 2009
            Buffalo, New York